FILED
CLERK, U.S. DISTRICT COURT

AUG 18 2003

CENTRAL DISTRICT OF CALIFORNIA
BY                              DEPUTY

Priority
Send
Enter
Closed
JS-5/JS-6
JS-2/JS-3
Scan Only

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

CHARLES H. WEBB, an individual,  )   CASE NO. CV 03-3788 DT (MCx)
                                 )
              Plaintiff,         )   ORDER **GRANTING IN PART**
                                 )   **WITHOUT PREJUDICE AND**
vs.                              )   **DENYING IN PART AS MOOT**
                                 )   DEFENDANT MITTLEMAN'S,
PHIL MITTLEMAN, an individual, and )  MOTION TO DISMISS FOR FAILURE
DOES 1 through 10, Inclusive     )   TO STATE A CLAIM UPON WHICH
                                 )   RELIEF CAN BE GRANTED.
                                 )
              Defendants.        )
                                 )
                                 )
_____  )

## I.    Background

### A.    Factual Summary

This case stems from a complaint filed by Plaintiff Charles H. Webb ("Plaintiff") against Phil Mittleman ("Defendant") as a result of a private placement stock offering.

The following facts are alleged by Plaintiff in the Third Amended Complaint For Rescission and Damages ("TAC"):



ENTERED ON ICMS

AUG 19 2003

CV



1       In the Winter of 1999, Defendant contacted Plaintiff with the prospect of

2   engaging Plaintiff in the purchase of stock from a firm known as Buildnet

3   ("Buildnet"). TAC ¶ 6.  At all times herein alleged, Buildnet stock was not

4   registered for sale to the general public either by the Federal or California

5   authorities.  Id.  However, Plaintiff reasonably relied on Defendant's

6   representations to Plaintiff that he was "qualified" with Buildnet to purchase stock

    on behalf of Plaintiff prior to its availability for sale to the general public.  Id.

8   Defendant further represented to Plaintiff that his attorney, Austen, was also

9   involved in the transaction.[1]  Id. at ¶ 8.  In light of such statements and the greater

10  weight Plaintiff placed on said representations in light of Austen's profession,

11  Plaintiff reasonably believed that the purchase of Buildnet stocks was not violative

12  of Federal or State laws.  Id. at ¶ 8 and ¶ 13.

13      On three separate occasions Plaintiff transferred funds to Defendant for the

14  purchase of Buildnet stock.  The first contact between Plaintiff and Defendant

15  occurred in the Winter of 1999, in person, via the internet and telephonically.  Id.

16  at ¶ 6.  Defendant offered to purchase Buildnet stock for Plaintiff on Plainitff's

17  behalf at $4.40 per share.  Id.  Defendant stated that he would be purchasing said

18  stock shares for Plaintiff, himself and other investors at the stated price.  Id. at ¶ 7.

19  Throughout his communications with Plaintiff, Defendant represented Buildnet

20

21      [1]Austen's alleged involvement in the transactions, namely his

22  accommodation of the sales in exchange for a direct loan that he failed to repay
    within a reasonable time, led Plaintiff to bring suit against Austen as a defendant

23  as well.  Id. at ¶ 9 and ¶ 16.  Part of the funds collected by Defendant acted as a

24  loan for Austen, who allegedly failed to repay Plaintiff after a reasonable time.  Id.
    at ¶ 14.  Plaintiff and Austen entered into a good faith settlement in regards to said

25  loans.  Id. at ¶ 14.  Due to a partial dismissal with prejudice entered on October 1,

26  2002 in the Superior Court of California, Austen is no longer a defendant.  Case

27  History Report, p. 22.

28                                   2

1  stocks as an excellent venture capital investment that was on the verge of being

2  offered to the public pursuant to an Initial Public Offering ("IPO"). Id.

3      On December 1, 1999, shortly after receiving Plaintiff's funds in the amount

4  of $50,000.00, Defendant repeated the terms of the agreement, namely that 25% of

5  the funds was to be issued to Defendant's attorney, Austen, who served as their

6  contact in obtaining said stock shares. Id. at ¶ 10. The remaining $37,500.00 was

    to be used by Defendant to purchase Buildnet stocks in Plaintiff's name for

8  Plaintiff's ownership. Id. Defendant acted as Plaintiff's agent in delivering the

9  loan to Austen in exchange for his accommodating the transaction. Id. at ¶ 10.

10  Austen had the requisite connections and business relationship with Buildnet

11  needed to conduct the sales. Id. at ¶ 9.

12      On December 14, 1999, Defendant reiterated the terms and conditions

13  stated in the first transaction in the context of a second sale of Buildnet shares. Id.

14  at ¶ 11. In reliance on those representations, Plaintiff tendered an additional

15  $275,000.00 to Defendant at the offices of Kushner-Locke in Los Angeles. Id.

16  Plaintiff later learned that Defendant did indeed place an order for said shares with

17  Buildnet after receiving Plaintiff's payments. Id. Two months later, on February

18  10, 2002, Austen met with Plaintiff and further affirmed the aforementioned

19  representations of legitimacy and investment potential made by Defendant. Id. at

20  ¶ 12. The meeting between the two in conjunction with the assurances made by

21  Defendant and Austen, left Plaintiff with the impression that said transactions

22  were not in violation of any laws. Id.

23      In April of 2000, Plaintiff tendered an additional $21,300.00 to Defendant.

24  Id. at ¶ 13. However, in this instance, Austen was not to receive a loan and the

25  price of the stock was increased to $10.00 per share. Id. The promises and

26  representations of legitimacy and investment potential were once again the same,

27

28                           3

1  as reiterated by Defendant during his meeting with Plaintiff at Chin-Chin
2  Restaurant in Los Angeles.  Id.

3       During 2000, Defendant took possession of the shares purchased by him
4  with Plaintiff's money.  Id. at ¶ 15.  The shares of stock continued to be owned by
5  Defendant personally although Defendant claimed that he was holding said shares
6  for Plaintiff as his agent and that Plaintiff was the actual owner despite his not
   being the record owner.  Id.  Defendant made written promises to Plaintiff that he
8  would consult "lawyers and CPAs" in order to properly effectuate a change in the
9  record ownership of the shares.  Id.  Such promises continued into the year 2001.
10 Id.

11      Throughout 2000 and 2001, Defendant assured Plaintiff that he would
12 deliver stock shares to him and draft a written agreement, which would act as a
13 proper and legal memorialization of the loans issued to Austen.  Id. at ¶ 14.
14 Plaintiff repeatedly demanded a writing to document: a) the loan made to Austen;
15 and b) the purchase of Buildnet stock by Plaintiff.  Id.  Nonetheless, Plaintiff never
16 received such documentation.  Id.

17      By acting as Plaintiff's agent in the sale of Buildnet stock shares, Defendant
18 had duties to make full and fair disclosures to Plaintiff regarding the following
19 material facts pertaining to said stocks: 1) Defendant failed to mention that his act
20 of selling shares to Plaintiff was a violation of a stock purchase agreement
21 Defendant had signed with Buildnet, which restricted him from reselling Buildnet
22 securities to other investors; 2) by engaging in such sale transactions, Defendant
23 acted as an unlicenced underwriter; and 3) the sale transactions herein alleged
24 were prohibited by State and Federal security laws.  Id. at ¶ 18.

25
26
27
28                                                    4

In reasonably relying on the misrepresentations and omissions of fact alleged in Plaintiff's TAC, Plaintiff invested a total of $346,300.00 in Buildnet shares and loans payable to Austen. Id. at ¶ 19.

**B.    Procedural Summary**

On November 28, 2001, Plaintiff filed a Complaint in the Superior Court of the State of California for the County of Los Angeles, Santa Monica District, case no. SC068882 ("Superior Court").

On January 1, 2002, Plaintiff filed the First Amended Complaint in Superior Court.

On February 21, 2002, Defendant filed a Demurrer in Superior Court.

On April 30, 2002, Plaintiff filed the Second Amended Complaint in Superior Court.

On May 8, 2003, Plaintiff filed the Third Amended Complaint for Rescission and Damages in Superior Court.

On May 29, 2003, Defendant filed a Notice of Removal of Action under 28 U.S.C. §1441 (b) with this Court and served a Notice to Adverse Party of Removal to Federal Court on the same date.

On June 6, 2003, Defendant filed a Notice of Motion and Motion to Dismiss Third Amended Complaint, which is presently before this Court.

**II.    Discussion**

    **A.    Standard**

        **1.    Motion to Dismiss for Failure to State a Claim.**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a defendant may seek to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Pursuant to Rule 12(b)(6), the court may only dismiss a plaintiff's complaint if it appears beyond doubt that the

5

plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99,103, 2 L.Ed.2d 80 (1957); Russell v. Landrieu, 621 F. 2d 1037, 1039 (9th Cir. 1980). The question presented by a motion to dismiss is not whether a plaintiff will prevail in the action, but whether a plaintiff is entitled to offer evidence in support of his claim. Cabo Distributing Co., Inc. v. Brady, 821 F. Supp. 601 (N.D. Ca.. 1992). Dismissal is proper under Rule 12(b)(6) only where there is a lack of cognizable legal theory, or an absence of sufficient facts alleged under a cognizable legal theory. Balisteri v. Pacifica Police Dept., 901 F. 2d 696, 699 (9th Cir. 1988).

In testing the sufficiency of a complaint, the court must assume that all of the plaintiff's allegations are true, and must construe the complaint in a light most favorable to the plaintiff. United States v. City of Redwood City, 640 F. 2d 963, 966 (9th Cir. 1981). Therefore, it is only the extraordinary case in which dismissal is proper. Corsican Productions v. Pitchess, 338 F. 2d 441, 442 (9th Cir. 1964).

Generally, orders granting motions to dismiss are without prejudice unless "allegations of other facts consistent with the challenged pleading could not possibly cure the defect." Schreiber Dist. v. Serv-Well Furniture, 806 F. 2d 1393, 1401 (9th Cir. 1986).

**B.      Analysis**

Defendant moves to dismiss the TAC in its entirety for violation of Fed. R. Civ. P. 8 and 9, arguing that it is confusing prolix and redundant and that it fails to allege satisfaction of a condition precedent, as well as particularity requirements for claims that sound in fraud. He argues that none of the five claims for relief alleged in the TAC state any factual allegations that warrant relief under alleged legal theories. Specifically he argues that:

6

1) First Cause of Action for Common Count-Money had and Received improperly combines two grounds for relief, neither of which are backed by factual allegations.

2) Second Cause of Action for Breach of Written Contract-Commercial Code §8108(a), Breach of Common Law Warranty of Transferability improperly combines three grounds for relief, one of which is dubious and all of which apply circuitous reasoning to show any claim.

3) Third Cause of Action for Breach of Fiduciary Duty-Constructive Fraud improperly combines two legal theories and fails to plead with particularity the allegation sounding in fraud.

4) Fourth Cause of Action Violation of Cal. Corp. Code §25130 fails to state a cause of action because this was an exempt transaction under California law since this was a non-issuer transaction as defined in Cal. Corp. Code §25011.

5) Fifth Cause of Action Violation of 15 U.S.C. §77e (a) and (c); Right of Rescission Under 15 U.S.C. §77*l* (1) is defective because the claims under §77*l* are private offerings which are beyond the scope of that section.

6) Defendant also argues that the Fourth and Fifth Causes of Action fail to plead facts that demonstrate compliance with the statute of limitation and therefore are time barred.

This Court first examines Defendant's contention that Plaintiff's federal claims under the Fifth Cause of Action are time barred because such a finding affects this Court's subject matter jurisdiction.

7

**1.  Defendant's Motion to Dismiss the Fifth Cause of Action for Failure to State a Claim Due to Failure to Plead Compliance with the Statute of Limitations is Granted.**

In his Fifth Cause of Action, Plaintiff alleges that Defendant's action constitutes a violation of 15 U.S.C. §77e (a) and (c).  Under 15 U.S.C. §77e (a), "unless a registration statement is in effect as to a security, it shall be unlawful for any person . . . (1) to make use of any means . . . of transportation or communication in interstate commerce . . .to sell such security . . . or (2) to carry or cause to be carried . . . any such security for the purpose of sale or for delivery after sale." 15 U.S.C. §77e (a)(1)(2). Section 77e (c) makes it unlawful for a person to offer to buy or sell any security unless a registration statement has been filed for the security.  See generally 15 U.S.C. §77e (c).  A violation of §77e may be used as the basis of rescission for §77*l*, which states " [a]ny person who (1) offers or sells a security in violation of section 77e of this title . . .shall be liable to the person purchasing such security from him . . ." for rescission of the purchase price.  15 U.S.C. §77*l* (1).  However, an action against a defendant may be limited by §77m, which provides that "[n]o action shall be maintained . . . to enforce a liability created under section 77*l* (1) . . . unless brought within one-year after the violation upon which it is based."[2]

Defendant argues that under the facts pled by Plaintiff the last purchase date of Buildnet stock was April 2000, which is more than 18 months before the filing of the original complaint and that Plaintiff has failed to sufficiently plead

---

[2] Section 77m further states that no action be brought to enforce a liability created under §77*l* (1) more than three years after the security was bona fide offered to the public.  Both sides acknowledge that this event never occurred, therefore it is not relevant to this case.

8

1  compliance with 15 U.S.C. §77m, which limits the time to bring such a complaint
2  to one year.
3      Plaintiff argues that this action is timely because 1) the transaction is
4  ongoing and not yet complete because Defendant has failed to deliver any
5  Buildnet shares 2) equitable tolling attaches to the violation; and 3) Defendant is
6  barred by equitable estoppel from asserting a statute of limitation defense.
   Construing the pleadings most favorable to Plaintiff, who opposes the Motion to
8  Dismiss, it will be assumed that the securities required registration prior to sale
9  because they were not subject to any exemption.[3]
10     In asserting a violation of §77*l* (a)(1), the plaintiff must affirmatively plead
11  sufficient facts in his complaint to demonstrate conformity with the statute of
12  limitations. Toombs v. Leone, 777 F.2d 465, 468 (9th Cir. 1985). Unlike claims
13  under §77*l* (a)(2), §77*l* (a)(1) claims do not begin to accrue at discovery of the
14  violation as asserted by Plaintiff, but at the date of the "violation." Erickson v.
15  Kiddie, W.L. 1564 (N.D. Cal. 1986). When the violation occurred is determined
16  by looking at the date of the last sales related activity, i.e. offer, sale, or delivery of
17  security. In re Nat'l. Mort. Equity Corp. . . ("NMEC"), 682 F.Supp. 1073, 1077
18  (C.D. Cal. 1987).[4]
19  _____

20     [3] Defendant asserts that the transactions were exempt under 15 U.S.C. §77d
21  (1) and (2). Section 77d(1) states that §77e transactions shall not apply to
   transactions by any person other than an issuer, underwriter, or dealer. For the
22  purposes of these pleadings, Defendant falls within the broad definitions of either
23  an underwriter or dealer. See 15 U.S.C. §77b (a)(11)-(12).   Additionally,
   Defendant's interpretation of §77d(2) that non-issuer transactions of non-public
24  offerings are exempt is unpersuasive.

25     [4] "Delivery" has the potential to have a dual role in this type of action. It
26  can be a condition of the sale as in Stone Fossil Oil & Gas, 657 F.Supp. 1449
27  (D.C. NM 1987) and/or it can be a separate cause of action under §77e (a)(2) as

28                                    9

1  This Court concludes on the basis of the facts alleged in the TAC, that the
2  date of the last sales related activity, at which time a violation accrued and
3  Plaintiff's statute of limitations began to run, was in December of 1999 for the
4  first two transactions and April of 2000 for the final transaction.  Plaintiff filed his
5  original complaint on November 28, 2001, which is more than the one-year
6  limitations period.  Furthermore, while Plaintiff argues that his claims should be
   saved by either the equitable tolling or equitable estoppel, the Court further
8  concludes those doctrines do not apply in this instance.  Therefore, the Court holds
9  Plaintiff has failed to plead compliance with the statute of limitations and his Fifth
10 Cause of Action is time barred and dismissed without prejudice and with 30 days
11 leave to amend.

12           **a.    Plaintiff's has Failed to Plead Compliance with the**
13                   **Statute of Limitations for the Violation of 15 U.S.C.**
14                   **§77*l* (1) as it Relates to 15 U.S.C. §77e.**

15      Plaintiff relies on <u>Toombs v. Leone</u>, 777 F2d 465 (9th Cir. 1985) and <u>Stone</u>
16 <u>Fossil Oil & Gas</u>, 657 F.Supp. 1449 (D.C. NM 1987) to argue that the delivery of
17 stock certificates is the last related sales activity by which the clock begins to run
18 on the statute of limitations.  Plaintiff argues that since no delivery of stock has
19 taken place, to his client, to date, he is not time barred from filing suit.

20      Plaintiff's reliance on <u>Stone</u> to show that in this instance the last sales
21 related activity is the actual delivery of stock certificates and therefore, the statute
22 of limitations has not yet accrued, is misplaced.  The <u>Stone</u> Court found that a
23 check sent by the plaintiff in response to the defendant's solicitation of buyers for
24 stock constituted an offer.  <u>Stone v. Fossil</u>, 657 F. Supp. at 1456.  The Court
25 reasoned that the sale was not consummated for the purposes of the statute of
26 _____
27 will be discussed *infra.*
28                                    10

limitations because the plaintiff's offer to purchase was subject to certain conditions. Id. Moreover, the parities continued to differ over the type of stock being sold and there remained a tentative, unfinished quality to the transaction. Id. Therefore, the Court held it was not until the plaintiff agreed to take delivery of unregistered stock that the sale was finally realized.

Here, Plaintiff alleges that it was not until after all the purchases had been completed that he began to demand delivery of the stock certificates. The scheme as described by Plaintiff was that Defendant would purchase Buildnet stock for himself, Plaintiff and certain other investors at $4.40 per share and that Defendant would hold the shares until Buildnet's IPO, at which time it could legally transfer the shares to the investors. According to Plaintiff, there were three (3) transactions between the parties, all of which give rise to his Federal claim.

The first two transactions required Plaintiff to tender a total of $325,000. The only terms of the agreement alleged by Plaintiff is that one quarter (25%) of his investment would represent a straight loan to Austen. The third transaction was structured so that Plaintiff would not be required to make a loan to Austen but would be required to pay $10.00 per share, which resulted in an additional $21,300 paid to Defendant. The terms of all three (3) agreements as alleged by Plaintiff make no mention that Defendant was to deliver the stock certificates prior to the Buildnet IPO. The parties acknowledge the IPO never took place and Buildnet filed for bankruptcy protection. Moreover, after the first two transactions, Plaintiff alleges that Defendant attempted to change the terms of the loan, whereby Austen would not have to pay the loan back if the Buildnet stock declined in value. Plaintiff alleges that he immediately objected to the proposed changes; however, he does not allege that despite this after-the-fact incident he demanded delivery of the stock certificates. Instead, in April 2000, when Plaintiff made his final purchase of the stock, the only change in the agreement that was

11

alleged was no further loan would be made to Austen.  Plaintiff at this late date was still not making a demand for the certificates.  Likewise, Plaintiff does not allege that between the first sale of stock in December 1999 and the last sale of stock in April 2000 Defendant was in breach of their contract for its failure to deliver the stock certificates.

Therefore, the instant case can be distinguished from <u>Stone</u> where the sale was not complete until the stocks had been delivered to and accepted by the plaintiff.  Here, as alleged by Plaintiff, the terms of the agreement were set.  Plaintiff was to tender money to Defendant for the purchase of stock, the stock would be held by Defendant and registered with Buildnet in his name until such a time that a "legal" transfer could be affected-sometime after the IPO, and one quarter of Plaintiff's investment would represent a loan to Austen.  Plaintiff does not allege that delivery of the stock prior to the IPO was a condition of his assent to the contract, nor does he allege a demand to hold on to his certificates, even if they are registered in Defendant's name, for safekeeping as a condition of the contract.[5]  The Court finds that the last sales related activity alleged is the sale of the securities to Plaintiff by Defendant, which occurred on December 1 and 14 of 1999 and April of 2000.  At these times, Defendant's alleged violation of §77$l$(a)(1) occured.

An alternative claim is available where delivery is not contemplated as a condition of the sale but nonetheless occurs afterwards.  15 U.S.C. §77e (a)(2).  Section 77e (a)(2) states in part that " [u]nless a registration statement is in effect

_____

[5] It is not clear to this Court whether Defendant actually was in physical possession of the stock shares or whether he was the registered owner on Buildnet's books and shares were not actually issued.  For example,  Plaintiff's Complaint repeatedly alleges that the stock shares would be held for the benefit of Plaintiff in Defendant's name.

1  as to a security, it shall be unlawful for any person . . . to cause to be carried

2  through the mails or interstate commerce . . . any such security for the purpose of

3  sale or for delivery after sale." Section 77e (a)(2) is itself a distinct violation

4  under §77e. Franks v. Cavanaugh, 711 F.Supp. 1186, 1193 (S.D. N.Y. 1989).

5  Since the statute defines "delivery after sale" as unlawful a violation would not

6  occur until the claim accrues, that is, the date of such delivery.

      Plaintiff avers that Defendant has not made an "after sale delivery" of the

8  unregistered stocks. Plaintiff implies that the promise to violate  §77e (a)(2) gives

9  rise to a cause of action and that absent Defendant's actual delivery of the stock

10  the statute of limitations does not bar a claim. The Court disagrees with Plaintiff.

      The statute of limitations on a claim for §77l (1) begins to run at the date of

11

12  Defendant's last sales-related activity, i.e., offer, sale or delivery of the security.

13  Toombs v. Leone, 777 F.2d at 468. In Toombs, the Court stated that because the

14  plaintiff made no allegation with respect to the date when the securities were

15  delivered or any dates upon which they might have been sold to other investors,

16  the last sales related activity occurred when the plaintiff purchased the

17  unregistered securities. Id. Likewise, here the Court has determined that Plaintiff

18  purchased  unregistered securities in December 1999, and April 2000, and that no

19  after sale delivery of stock occurred.[6] Therefore, since Plaintiff did not file suit

20  until November 2001, which is more than 12 months after the violation of §77l

21  (1), Plaintiff's claims are time barred under 15 U.S.C. §77m.  Furthermore,

22

23      [6] Plaintiff argues that unlike Toombs where the claim failed because "no
allegation" of delivery was asserted, his claim should succeed because he has

24  made an allegation regarding delivery, specifically that Defendant promised to

25  deliver the shares. The Court is unpersuaded by this literal reading of Toombs.
Rather, it understands the passage to mean that the plaintiff, as in the case before

26  this Court, did not allege facts to show that an after sale delivery took place or that

27  delivery was a condition of the purchase.

28

applying the same analysis to a violation of §77e (c), which also gives rise to a violation of §77*l* (1), Plaintiff has failed to plead compliance with the statue of limitations, and his claim under that section is also time barred under §77m.

**b. Plaintiff's Fifth Cause of Action is not Saved by His Alleged Reliance on Defendant's Fraudulent Misrepresentation.**

Plaintiff argues that equitable tolling or estoppel should apply because of Defendant's on going misrepresentations. He relies on essentially the same facts to assert both theories, i.e., because Defendant 1) took possession of stock shares in his name representing that he was Plaintiff's agent; 2) promised that Plaintiff was the actual owner of the stock shares; 3) promised in writing to consult experts to effect a change in record ownership; 4) continued to assure Plaintiff that the transaction comported with requisite securities laws. He argues that all of these statements were fraudulent misrepresentations that continued up until the time of filing this action.

As discussed above, the statute of limitations on a 77*l* (1) claim begins to run from the date of defendant's last sales-related activity, i.e., sale, delivery or offer of the security. Toombs, at 968. Because Plaintiff filed his original complaint on November 28, 2001, more than one year after the last sales related activity, his §77*l* (1) claims are time barred unless, as he argues it can be saved by Defendant's fraudulent misrepresentation.

**i. Equitable Tolling does not Apply in this Instance.**

The Ninth Circuit does not appear to have decided whether §77m's one-year limitation on §77*l* (1) actions can be equitably tolled for fraudulent misrepresentation. Therefore, Plaintiff relies on Lehman v. United States, 154

1  F.3d 1010 (9th Cir. 1990), to assert that equitable tolling is appropriate in this

2  instance.

3        The Lehman Court stated that equitable tolling primarily focuses on the

4  Plaintiff's excusable ignorance of the limitations period and that the doctrine is

5  not available to avoid the consequences of one's own negligence.[7] Lehman v.

6  United States, 154 F.3d 1016. It stated:

8        the equitable tolling doctrine has been applied by the Supreme Court
         in certain circumstances, but it has been applied sparingly; for
9        example, the Supreme Court has allowed equitable tolling when the
         statute of limitation was not complied with because of defective
10       pleadings [or] when a claimant was tricked by an adversary into
11       letting a deadline expire . . . *Courts have been generally unforgiving,*
12       *however, when a late filing is due to claimant's failure 'to exercise*
13       *due diligence in preserving his legal rights.*
14

15  Id. (original emphasis). The Lehman Court found that the defendant did not give

16  any advice about the plaintiff's legal rights nor did it have a duty to inform the

17  plaintiff of the statute of limitations. Id. It found that the absence of legal advise

18  from defendant does not make plaintiff's ignorance of the law excusable. Id.

19  Therefore, the Court held the plaintiff's claims were time barred and not equitably

20  tolled.

21        In this instance, Plaintiff does not allege that Defendant gave any assurance

22  that the statute of limitations would be tolled or that Defendant would forego a

23  statute of limitations defense for any violation if the contract turns out to be

24  illegal.  Nothing in the TAC demonstrates that Plaintiff's ignorance of the statute

25

26        [7] That case was brought under Federal Tort Claims Act by the plaintiff who
   had filed a claim against the U.S. Postal Service.  In a written notice the plaintiff
27   was notified that his claim was denied.

28                                    15

1  of limitations period was excusable.  Plaintiff's claim to have exercised reasonable

2  diligence in discovering a cause of action strains credulity.  Plaintiff alleges that

3  he participated in what was essentially a secret scheme whereby stock would be

4  bought and held under Defendant's name until it could be "legally" transferred to

5  Plaintiff. He alleges Defendant inferred that the stock could become worthless,

6  and that Defendant repeatedly broke promises to him throughout 2000 and early

7  2001. However, Plaintiff avers that the first time he spoke to a Austen prior to

8  filing suit was in February of 2000, two months after he had made his initial

9  investment for almost a third of a million dollars.  Moreover, Austen was the same

10 person that received 25% of his initial investment.  Plaintiff's TAC shows no

11 exercise of diligence on his part.  For example, he does not allege if he attempted

12 to determine if it was possible for Buildnet stock to become worthless, as it was

13 inferred by Defendant in the winter of 2000 or to determine what his legal rights

14 were after Defendant repeatedly broke promises to him in 2000 and 2001.  The

15 mere expressions by Defendant of the legality of the transactions, the actual

16 ownership and attempts to change registration of the securities is not enough to

17 excuse Plaintiff's lack of diligence in allowing  his legal rights to lapse.  In these

18 circumstances, this Court concludes that equitable tolling does not apply.[8]

19            **ii.    Equitable Estoppel does not Apply in this**
20                    **Instance.**

21  _____

22      [8] A District court case has stated that equitable tolling is allowed in cases
    where Plaintiff alleges fraudulent concealment. <u>NMEC</u> at 1166. "In the context
23  of §77$l$ (1) claims, plaintiffs who seek to allege fraudulent concealment have a
    particularly heavy burden.  They must plead with particularity 1) why they did not
24  know the securities should have been registered, 2) when they first discovered
    registration was required, 3) what circumstances or events led to that discovery,
25  and 4) why they did not discover those facts earlier. <u>NMEC</u> at 1167.  Plaintiff
26  fails to meet these requirements.

27

28                                    16

Plaintiff, relying on <u>Stitt v. Williams</u>, 919 F.2d 516 (9th Cir. 1990), argues that because of Defendant's alleged fraudulent statements discussed above and because the whole transaction was illegal, Defendant is estopped from asserting the statute of limitations. The <u>Stitt</u> Court, in a case involving alleged violations of various sections of the Securities Act of 1933 and 1934, held that equitable estoppel applies when a plaintiff who knows of his cause of action reasonably relies on the defendant's statements or conduct in failing to bring suit. <u>Stitt v. Williams</u>, 919 F.2d at 521.

In <u>Stitt</u>, the appellee was alleged *inter alia* to have  1) misrepresented the nature of agreements and the allocation of profits they provided for; 2) failed to provide complete texts of agreements or exemptions from registration requirements; 3) made repeated promises and representations that the agreements would be changed to reflect a fair allocation of profits and other interests. <u>Stitt v. Williams</u>, 919 F.2d at 520.  The appellants argued unsuccessfully that it reasonably relied on these promises and appellee should be estopped from asserting the statute of limitations. <u>Id.</u>  Appellants argued that the appellees made promises on which appellants foreseeably and reasonably relied, promises that misled appellants into not filing suit. <u>Id.</u> at 521.  However, the Court stated, it could not credit appellants' contention that despite the fact that appellee did not keep his repeated promises to alter the agreement, they year after year reasonably relied on those promises and delayed instituting suit. <u>Id.</u>  The Court held that appellants' alleged reliance on appellee's assurances was highly improbable in the context that was alleged. <u>Id.</u>

Here, Plaintiff argues that he relied on Defendant's statements alleged to be made as late as the spring of 2001 that the transactions were not illegal and that in reliance of these statements he did not seek legal advise. Plaintiff alleges that during 2000, there was a legal problem with effecting a transfer of the Buildnet

17

stock from Defendant.  He alleges that Defendant promised to consult with lawyers and CPAs to figure out how to solve the legal problem.  However, he also alleges that Defendant repeatedly broke promises to deliver the stock shares to Plaintiff and memorialize the Austen loan.  Plaintiff does not make any allegation that he was advised by Defendant that he should not seek outside legal advise.  The allegations in the TAC do not show any statement that Defendant offered to settle the action if Plaintiff would not sue.   The allegations do not show that Defendant represented that in the event the transaction is illegal it would forego any defense in return for non-suit.  The allegations as described by Plaintiff do not show Defendant attempting to prevent Plaintiff from obtaining legal advice or starting legal proceedings.  Consequently, Plaintiff has not sufficiently alleged that equitable estoppel should apply in this instance.

### 2.    Defendant's Motion to Dismiss concerning Plaintiff's State Claims is Moot.

This case was removed to this Court based on the existence of a federal question- violation of Securities Act of 1933.  Because the cause of action asserting the federal claim has been dismissed without prejudice, this Court declines at this time to rule on the remainder of the present motion.[9]  In the event this court determines there is no federal jurisdiction this Court will remand the remaining state claims to the Superior court of the State of California for the County of Los Angeles.

///

///

///

---

[9] Defendant based his removal on the grounds of Federal Question Jurisdiction.  It is not apparent from the TAC whether diversity jurisdiction exists, because there are no allegations regarding the citizenship of the parties.

## III.   Conclusion

This Court **Grants** in Part without prejudice and **Denies** in part as moot Defendant's Motion to Dismiss Plaintiff's Third Amended Complaint.

Specifically this Court:

1)   Grants without prejudice and with 30 days leave to amend Defendant's Motion to Dismiss the Fifth Cause of Action; and

2)   Denies without prejudice as Moot Defendant's Motion to Dismiss the First, Second, Third,  and Fourth Causes of Action.

IT IS SO ORDERED.

DATED:   Aug 18 2003

**DICKRAN TEVRIZIAN**
Dickran Tevrizian, Judge
United States District Court

19